UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 1, 2015
```

-------------------------------------------------------X
                          :

KEVIN RIOS,                     :
                          :
               Petitioner,   :      14-CV-1727 (KBF)
       -v-                 :
                          :      OPINION & ORDER
CHRISTOPHER MILLER,      :
                          :
               Respondent.  :
                          :
-------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

On March 3, 2014, petitioner Kevin Rios filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Pet. for Writ of Habeas Corpus ("Pet."), ECF No. 2.) Petitioner seeks relief from the October 20, 2009 judgment of the Supreme Court of the State of New York, New York County, convicting him, after a jury trial, of two counts of Predatory Sexual Assault (N.Y. Penal Law § 130.95(1)(b)), and sentencing him to concurrent terms of 15 years to life imprisonment. Petitioner is currently incarcerated pursuant to that judgment.

Petitioner challenges his conviction on three grounds: (1) trial counsel was ineffective for failing to object to the jury charge, which omitted an instruction for Predatory Sexual Assault on "actual possession" of a dangerous instrument, and for failing to object to the prosecutor's summation, which misrepresented evidence regarding whether the victim had been cut by a knife; (2) petitioner was denied the due process right to a fair trial for the same reasons regarding the jury instructions and prosecutor's summation; (3) the trial court violated petitioner's rights, pursuant

to the Confrontation Clause, by admitting laboratory reports and testimony of a medical examiner who had no involvement in performing the procedures.

The question surrounding the lack of a jury instruction on "actual possession" is of particular concern to the Court.  This petition raises a question as to whether N.Y. Penal Law §130.95, a "relatively new statute for which there exists little or no legislative history or commentary," requires an instruction on "actual possession" under §130.95(1)(b)'s "uses or threatens the immediate use of a dangerous instrument" language.  See People v. Singh, 36 Misc. 3d 910, 914 (N.Y. Sup. Ct. 2012). The state's first-degree robbery statute, N.Y. Penal Law § 160.15, includes identical dangerous instrument language and the law is clear that a jury instruction on actual possession is necessary.  Petitioner argues that the failure to instruct the jury on actual possession enabled the jury to improperly convict him of the top count of predatory sexual assault, which ultimately carried a sentence of 15 years to life.  While it appears evident that a jury instruction including "actual possession" language would presently be required, the omission cannot be considered a "fundamental miscarriage of justice" under these facts given the ambiguity surrounding the law at the time of trial in 2009 and that the lack of instruction on "actual possession" did not lead to the conviction of someone who is "actually innocent."  See Murray v. Carrier, 477 U.S. 478, 495-96 (1986).

For the reasons set forth below, Rios's request for habeas relief is DENIED.

2

## I.     FACTUAL BACKGROUND

On the morning of January 30, 2008, the female victim[1] traveled from her home in New Jersey to an apartment in Manhattan, where she served as a nanny to three children. (Resp't App. at 121-24.) While unlocking the building's interior door, she observed Rios enter the building and walk into the elevator behind her. (Id.) When the elevator stopped on the second floor, Rios peered out of the door then grabbed the victim from behind and covered her mouth with his hands. (Id. at 134, 137.) Rios told her not to scream and that he had a knife. (Id.) The victim initially struggled because she did not believe Rios had a knife, but she stopped after feeling pain from what she believed to be a "small" knife pressed against her neck. (Id. at 137-40.)  Rios told the victim, in Spanish, to pull down her pants. (Id. at 139.) He then forced her to perform oral sex and vaginal penetration, and ejaculated into her vagina. (Id. at 140-45.)

After Rios exited the elevator, the victim went up towards her employer's apartment on the sixth floor and called for help. (Id. at 152). She cleaned herself in the apartment but never cleaned her underwear. (Id. at 156-57.)  After the police arrived, the victim was transported to Mount Sinai Hospital, where she was examined and treated by physician's assistant Arianne Sclumpf O'Kane. (Id. at 159-60.) The victim reported having been sexually assaulted at knifepoint. (Id. at 260-61.) She "complained of tenderness" in her neck but initially denied being cut by a knife. (Id. at 197, 266.) O'Kane observed that the victim had two abrasions on

---

[1] Pursuant to this Court's order of September 15, 2014, the female victim's name was expunged from all records relevant to this habeas petition in order to protect her privacy. (ECF No. 15.)

the right side of her face and one on her neck. (Id. at 265-66.) The victim was not aware that Rios had cut her until O'Kane informed her of the abrasions and the victim observed the wounds in the mirror. (Id. at 211.) The injuries were not present before the attack. (Id. at 169.)

On February 28, 2008, the Office of the Chief Medical Examiner ("OCME") performed a DNA typing process to develop a DNA profile of the semen found on the victim's underwear, after which the OCME matched the sample to Rios's DNA profile. (Id. at 380-83.)  That same day, the police located Rios and brought him to Manhattan SVU to place him in a line-up. (Id. at 498-99.)  The victim eventually identified Rios as the perpetrator. (Id. at 177-79, 573.)

Police collected a sample of Rios's DNA and forwarded the buccal swab to OCME for forensic testing. (Id. at 522-27.) OCME Analyst Sarah Phillips generated a DNA profile from Rios's buccal swab and then compared it to the DNA profile developed from the semen sample on the victim's underwear. (Id. at 387.) Phillips found "with a reasonable degree of scientific certainty" that the profiles matched. (Id. at 387-89, 411.)  The chances of finding that particular DNA profile in the general population were "one in greater than one trillion people."  (Id. at 395.)

## II.   PROCEDURAL HISTORY

On March 18, 2008, a New York grand jury charged Rios for his role in two separate attacks. (Resp't Mem. at 2.) Regarding the earlier 2006 incident, Rios was charged with three counts of first-degree rape, three counts of first-degree criminal sexual act, one count of first-degree sexual abuse, and two counts of first-degree

robbery. (Id.) For the 2008 incident, described above, Rios was charged with two counts of predatory sexual assault, one count of first-degree rape, and one count of first-degree criminal sexual act. (Id.)  The court severed the two crimes, and, on September 11, 2009, Rios proceeded to a jury trial on the charges related to the 2008 rape.

At trial, the victim testified about the incident and identified Rios as the man who raped her. (Resp't App. at 159.)  During the prosecution's summation, the prosecutor remarked:

> During the medical records, you can take a look at those, they're in evidence. She does say that a knife was used on the victim. What she doesn't realize is that she's actually cut by the knife, and she explained to you: I didn't have a mirror. I didn't know. I didn't know. I felt the pain to my neck, and she had explained the pain to the neck in the medical records. It's there. But, at that time, she didn't know that she was actually cut, and that's why she says no. But she does say a knife was used.

(Id. at 644.) Defense counsel did not object.

For the two counts of Predatory Sexual Assault, the Court instructed the jury that:

> In order . . . to find the defendant guilty of [Count One Predatory Sexual Assault], the People are required to prove . . . beyond a reasonable doubt both of the following two elements. One, that . . . Kevin Rios, committed the crime of Rape in the First Degree. And two, that in the course of and in furtherance of the commission of such crime the defendant used or threatened the immediate use of a dangerous instrument.
>
> In order . . . to find the defendant guilty of [Count Three Predatory Sexual Assault], the People are required to prove from all of the evidence in the case beyond a

> reasonable both of the following two elements: One, that .
> . . Kevin Rios, committed the crime of criminal sexual act
> in the first degree. Then two, that in the course or in
> furtherance of the commission of such crime the
> defendant used or threatened the immediate use of a
> dangerous instrument.

(Id. at 682-87.)  The Court additionally defined dangerous instrument as "any

instrument which under the circumstances in which it is used, attempted to be

used, or threatened to be used, is readily capable of causing death or other serious

injury." (Id. at 686.) The Judge did not further define "use or threat the use of a

dangerous instrument".  Defense counsel did not object to the jury charge as

delivered. (Id. at 685-91.)

On September 23, 2009, the jury found Rios guilty of the two counts of

Predatory Sexual Assault. (Id. at 702-05.)[2]  On October 20, 2009, Justice Farber

sentenced Rios to concurrent terms of 15 years to life imprisonment.  (Id. at 723.)

Petitioner appealed his conviction to the New York Supreme Court, Appellate

Division, First Department, arguing the same points made in the instant petition.

(Id. at 726, 889.)  On January 15, 2013, the Appellate Division unanimously

affirmed the judgment of the trial court. (Id. at 930.)  The Appellate Division held

that petitioner's due process claims, regarding the prosecutor's summation and the

jury charge, were unpreserved. (Id.) The Court noted that "regardless of whether

defendant's trial attorneys should have raised these issues," trial counsel's failure to

do so did not constitute ineffective assistance of counsel because the "defendant

---

[2] The counts of first-degree rape and first-degree criminal sexual act were submitted to the jury as
an alternative to the predatory sexual assault counts. (Resp't Mem. at 3.)

ha[d] not established that he was prejudiced under either state or federal standards." (<u>Id.</u>)  It also held that petitioner's confrontation claims regarding the admission of the laboratory reports and Philip's testimony were unpreserved and failed on the merits.

On January 28, 2013, petitioner submitted an application for permission to appeal to the New York Court of Appeals, renewing only his confrontation and ineffective assistance claims – not the other due process claim. (<u>Id.</u> at 932-33.) On March 25, 2013, the New York Court of Appeals denied petitioner's motion for leave to appeal. (<u>Id.</u> at 977.)  On March 3, 2014, petitioner filed the instant petition.[3]

III.   LEGAL FRAMEWORK

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires that in order for a petitioner to prevail on a petition for habeas corpus, he must demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court" or "was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d)(l)-(2).  A petitioner shows that a state court's decision is contrary to clearly applicable federal law "by demonstrating either (1) that the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court, or (2) that, when presented with facts that are materially indistinguishable from a relevant Supreme Court precedent, the state court arrived at a result opposite to the one reached by the

---

[3] The issue of timeliness has not been raised, but the Court notes that petitioner properly filed the habeas petition less than one year after his conviction became final.

Supreme Court." Evans v. Fischer, 712 F.3d 125, 132-33 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)) (internal quotation marks omitted). A petitioner demonstrates that a state court decision was based on an unreasonable application of federal law by proving that the state court "unreasonably applied" federal legal principles "to the facts of the case before it . . . involv[ing] some increment of incorrectness beyond error." Id. at 133 (internal quotation marks and citation omitted).

Those seeking habeas relief face a high burden and a reviewing court must give a state court decision due deference. See Harrington v. Richter, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be."); Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (noting that § 2254's "highly deferential" standard "demands that state-court decisions be given the benefit of the doubt"). Indeed, state court decisions are presumed to be correct, and petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Habeas will not be granted "merely because there is a reasonable possibility that trial error contributed to the verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation marks omitted).

IV.   DISCUSSION

Petitioner asserts the following claims: (1) trial counsel was ineffective for failing to object to the jury charge, which omitted an instruction for Predatory Sexual Assault on "actual possession" of a dangerous instrument, and for failing to object to the prosecutor's summation, which misrepresented evidence regarding

whether the victim had been cut by a knife; (2) petitioner was denied the due process right to a fair trial for the same reasons regarding the jury instructions and prosecutor's summation; (3) the trial court violated petitioner's rights, pursuant to the Confrontation Clause, by admitting laboratory reports and testimony of a medical examiner who had no involvement in performing the procedures.

As set forth below, petitioner's claims fail. Petitioner's claim of ineffective assistance of counsel fails on the merits.  Both petitioner's due process and confrontation claims are procedurally barred.

A.   <u>Ineffective Assistance of Counsel Claim</u>

Petitioner argues that he was deprived of effective assistance of counsel when his trial counsel failed to object to the court's jury charge, which omitted an instruction on "actual possession" regarding the aggravating element of "use or threat of use of a dangerous instrument" under N.Y. Penal Law §130.95(1)(b) and to the prosecution's summation.[4]  The Appellate Division found that "regardless of whether defendant's trial attorneys should have raised these issues," trial counsel's failure to do so did not constitute ineffective assistance of counsel because the "defendant ha[d] not established that he was prejudiced under either state or federal standards." (Resp't App. at 931.)

---

[4] The Court acknowledges that in his petition, petitioner premised his ineffective assistance of counsel claim only on trial counsel's failure to object to the jury charge, providing the government with notice to respond only to that claim. However, petitioner subsequently included reference to the prosecution's summation as an alternative basis in his reply brief, and in the interest of reading <u>pro se</u> petitioner's briefs broadly, the Court chooses to address the merits of both related claims.

To prevail on an ineffective assistance of counsel claim, petitioner must meet two requirements. Strickland v. Washington, 466 U.S. 668, 686 (1984). First, petitioner must demonstrate that counsel's performance was "fundamentally defective." Id. It is insufficient to show that counsel merely omitted a "nonfrivolous argument" because counsel is not required to advance every argument that could be made. Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001). Rather, in order to prove deficient performance, petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness" under "prevailing professional norms." Strickland, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential," with a strong presumption that "the challenged action 'might be considered sound trial strategy'" in light of the particular facts of the case and the time of counsel's conduct. Id. at 689.

Second, petitioner must prove that the errors were so prejudicial that they deprived him of a fair trial. Id. at 686. Error, even if "professionally unreasonable" does not warrant setting aside a judgment if the error had no effect on the outcome. Id. at 691. Moreover, it is not enough to show that the errors "had some conceivable effect on the outcome." Id. at 693. Rather, petitioner must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

"Establishing that a state court's application of Strickland was unreasonable under § 2254(d)" is difficult because both standards are "highly deferential" and when applied in tandem, review is "doubly so." Harrington v. Richter, 562 U.S. 86,

105 (2011). Thus, when reviewing a state court's application of <u>Strickland</u>, "the question is whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard." <u>Id.</u>  Moreover, in order for a habeas petitioner to prevail on an ineffective assistance of counsel claim, he must show that the state court applied <u>Strickland</u> "in an objectively unreasonable manner." <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002).

       1.    <u>Jury Charge</u>

Petitioner argues that trial counsel was ineffective for failing to request (or object to the lack of) a jury instruction that included an instruction that the jury must find "actual possession" of the knife for conviction under N.Y. Penal Law §130.95(1)(b). (Pet. at 9.)  Specifically, petitioner contends that in order to satisfy the requirement in §130.95(1)(b) that he "use[d] or threaten[ed] the immediate use of a dangerous instrument," the prosecution was required to establish that petitioner was in "actual possession" of a dangerous weapon during the attack. Although § 130.95(1)(b) makes no explicit reference to "actual possession" as an element of the offense, similar "uses or threatens the immediate use of a dangerous instrument" language in the state's first-degree robbery statute, N.Y. Penal Law § 160.15, requires a showing and jury instruction of "actual possession."[5]  <u>See</u> <u>People v. Ford</u>, 11 N.Y.3d 875, 877 (2008); <u>People v. Pena</u>, 50 N.Y.2d 400, 407 (1980). In January 2009, following the ruling in <u>Ford</u>, the New York pattern jury

---

[5] N.Y. Penal Law § 160.15(3) provides that "[a] person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . <u>[u]ses or threatens the immediate use of a dangerous instrument</u>" (emphasis added).

instructions for first-degree robbery were amended to include language that the state must prove that "the defendant <u>possessed</u> a dangerous instrument and used or threatened the immediate use of that dangerous instrument." <u>See</u> <u>People v. Grant</u>, 17 N.Y.3d 613, 619 n.3 (2011) (citing CJI2d(NY) Penal Law § 160.15(3) (rev. Jan. 5, 2009)).  In addition, the Second Circuit recently held that appellate counsel was ineffective for failing to raise a meritorious claim that the trial court failed to give an "actual possession" instruction with regards to a § 160.15 first-degree robbery charge, despite trial counsel specifically asking for the instruction and it having been "established in New York for a generation" that such an instruction was necessary.  <u>See</u> <u>Lynch v. Dolce</u>, 789 F.3d 303, 314 (2d Cir. 2015) ("Criminal defense lawyers are not often able to argue on appeal that the trial court refused a specific request for a jury instruction that, at the time the appeal is heard, the state's highest court had recently held (based on long-standing precedent) <u>must</u> be given.").

It appears today to be evident that, like the § 160.15 first-degree robbery statute, a jury must find "actual possession" to convict on a § 130.95 Predatory Sexual Assault count.  There is no logical basis for holding that equivalent language across the two laws involves different requirements.  One court has previously grafted the "actual possession" requirement in the first-degree robbery statute to a first-degree burglary statute. In 1989, the Appellate Division looked at the dangerous instrument requirement in both the first-degree robbery statute (§ 160.15) and first-degree burglary statute (§ 140.30) and concluded that "these two statute contain identical language with respect to threatening the use of a

dangerous instrument.  We reject the People's argument that we should distinguish between the robbery and burglary statutes in construing identical language . . ." People v. White, 155 A.D.2d 934 (4th Dep't 1989).  The court reduced the conviction to burglary in the third degree, finding that, based on the particular facts, no rational person could conclude that the defendant had actual possession of the razor.  Id.; see also People v. Peralta, 3 A.D.3d 353, 354-55 ("actual possession" must also be found for a second-degree burglary change requiring "use or threaten the immediate use of a dangerous instrument").

The question for this Court in reviewing, on a § 2254 habeas motion, the Appellate Division's application of Strickland "is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  See Harrington, 562 U.S. at 105. Given the ambiguity surrounding § 130.95 at the time of petitioner's trial, there is a reasonable argument that trial counsel's failure to object to the jury charge did not constitute deficient performance.  This Court believes that trial counsel should have compared the language of the statute to the equivalent language in the robbery or burglary statute and insisted on an "actual possession" finding.  However, the quality of trial counsel's assistance must be assessed based upon the prevailing law at the time of his representation.  See Jameson v. Coughlin, 22 F.3d 427, 429 (2d Cir. 1994) (holding that counsel's failure to raise the jury discharge issue was reasonable considering New York Appellate Division's precedents at the time). Unlike with Lynch, no New York appellate court had held in 2009 that an

instruction on "actual possession" was required for § 130.95.  In fact, the only court that has clearly held that such an instruction is required is the Bronx County Supreme Court in 2014, wherein the judge issued an opinion suggesting that "actual possession" is a "well-settled" "legal principle" underlying both Predatory Sexual Assault and first-degree robbery. See People v Grant, 43 Misc.3d 1207(A) (N.Y. Sup. Ct. 2014).  It was not until June 2013, four years after petitioner's trial, that the criminal jury instructions for § 130.95(1)(b) were revised to include "actual possession" language. See CJI2d(NY) Penal Law § 130.95 (1)(b). The revision was not based on any state appellate court mandating the instruction of actual possession in a § 130.95 charge – as no such case exists – but the revision cites the inclusion of the language in the analogous § 160.15 robbery statute.  Unlike the "generation" of precedent described in Lynch regarding the first-degree robbery statute, § 130.95 is a "relatively new statute for which there exists little or no legislative history or commentary." See Singh, 36 Misc. 3d at 914 (citing Sponsor's Mem, Bill Jacket, L 2006, ch. 107 at 6).  Accordingly, petitioner fails to satisfy the first prong of Strickland's "highly deferential" test.

Even assuming that counsel's performance was "fundamentally defective" for failing to argue that a jury must find "actual possession", petitioner nonetheless cannot meet the second prong of Strickland.  In order to meet the second prong, the error must be sufficiently prejudicial such that there is a "reasonable probability" that, but for counsel's error, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694.  Specifically, the Court asks "whether there is no

reasonable possibility that the failure to instruct on the possession requirement affected the jury's verdict." Lynch, 789 F.3d at 316. Here, there is no reasonable possibility that a jury would have found petitioner did not have actual possession of the knife.

While "a defendant's statement that he is in possession of a dangerous instrument, standing alone" is not legally sufficient to establish "actual possession of a dangerous instrument," such a statement alongside testimony that the victim felt a weapon pressed against her, and/or suffered abrasions as a consequence, is sufficient. See People v. Grant, 17 N.Y.3d 613, 619 (2011) (holding that evidence was insufficient to prove defendant was in "actual possession" of dangerous instrument because the only evidence was a handwritten demand note defendant passed to the victim); People v. Hamer, 69 A.D.3d 484, 484  (1st Dep't 2010) (upholding a first-degree robbery conviction because the victim's testimony that he felt an unseen hard object "jabbing" into his back, coupled with defendant's threat that the object was an ice pick was sufficient evidence of actual possession); People v. Russell, 71 A.D.3d 1589 (4th Dep't 2010) (finding that defendant "use[d] or threaten[ed] the immediate use of a dangerous instrument" with respect to § 130.95 where "[t]he victim testified that, prior to raping her, defendant held what appeared to be a knife near her neck and face.  Although the victim was not certain that what she observed was a knife, she believed that whatever defendant held could be used to hurt her."); People v. Hallums, 157 A.D.2d 800, 801 (2d Dep't 1990) (holding that the evidence was legally sufficient where, although the victim could not see the

object placed against his neck, it left an indentation on his neck and he testified that it felt like a knife).  In <u>Lynch</u>, the Second Circuit found that the petitioner satisfied the prejudice prong of <u>Strickland</u> as "the evidence that [petitioner] himself possessed a gun during the robbery was minimal." <u>Lynch</u>, 789 F.3d at 317.  The victim in <u>Lynch</u> testified that she felt something in her waist but it "[c]ould ... have been his fist," that she looked down to see whether he had a gun and concluded that he did not, and that he failed to brandish the gun after she began struggling with him.  <u>Id.</u>[6]

Here, trial counsel's failure to object, even if erroneous, does not constitute ineffective assistance of counsel because there is no reasonable possibility that the jury's verdict would have changed had there been an instruction regarding actual possession.  In fact, there was ample evidence that petitioner did possess the knife – even where the victim could not testify to having seen the knife.  In <u>Russell</u>, the Appellate Division found that the "use or threaten the immediate use" language of § 130.95 was satisfied where "the victim was not certain that what she observed was a knife, [but] she believed that whatever defendant held could be used to hurt her."  <u>See</u> <u>Russell</u>, 71 A.D.3d at 1589.  New York courts have found that the "actual possession" requirement in the first-degree robbery context is met where a threat of a dangerous weapon is combined with another sensory perception of the weapon.

---

[6] Moreover, the jury convicted the petitioner of one robbery count, but acquitted him of first-degree robbery while armed with a deadly weapon.  <u>Id.</u>  The Second Circuit stated that it was "probable – that the jury distinguished between the trial court's instructions on the two [robbery] counts because to be 'armed with a deadly weapon' . . . on its face implies possession in its ordinary meaning."  <u>Id.</u> As the jury may have made such a distinction between the two robbery charges, the Second Circuit concluded that there was a "reasonable possibility" that the verdict was affected by the lack of an "actual possession" instruction for the robbery charge on which petitioner was found guilty.  <u>Id.</u>

See Hamer, 69 A.D.3d at 484 ("This element was established by the victim's testimony that he held an unseen hard object 'jabbing' into his back, coupled with defendant's death threat, in which he told the victim the object was an ice pick."); Ford, 11 N.Y.3d at 878 ("During the course of the robbery, defendant stated, 'I got a knife,' while simultaneously moving his hand towards his pants pocket.  These acts, considered together, provide legally sufficient evidence to establish that defendant 'used or threatened the immediate use' of a knife in the course of the robbery. . ."); Hallums, 157 A.D.2d at 801 ("it was not necessary for the victim to actually see the weapon or instrument to prove this element of the crime"); People v. Lawrence, 124 A.D.2d 597 (2nd Dep't 1986) (finding the evidence sufficient where the defendant threatened to cut the victim and the victim "did not see the object" but "felt a cold hard object next to her body").

As with those cases, here the victim did not see the knife.  However, petitioner's threat of the knife is combined with her feeling the knife.  While the victim was initially unsure that petitioner actually had a knife, she eventually felt pain from what she believed to be a "small" knife pressed against her neck.  As in Hamer, the victim testified that petitioner verbally threatened that he possessed a knife, and that she felt what she thought was a knife press against her.  See Hamer, 69 A.D. 3d at 484; (Resp't App. at 137-40).  As in Hallums, the victim had visible abrasions on her neck, not present before the attack.  See Hallums, 157 A.D.2d at 801; (Resp't App. at 169, 267-68.)  O'Kane, who treated the victim at the hospital, testified that the victim reported being sexually assaulted at knifepoint and that

she had two abrasions on the right side of her face and one on her neck. (Resp't App. at 265-66.) The facts here fit seamlessly with the facts of each case where actual possession was found. Thus, there is no "reasonable possibility" that, but for the lack of a jury instruction on actual possession, the jury would have failed to convict petitioner of the top count of Predatory Sexual Assault. See Strickland, 466 U.S. at 694. The Appellate Division's application of Strickland was accordingly not "objectively unreasonable" as any error would not have changed the outcome of the case.

### 2. Prosecution's Summation

Petitioner also argues that trial counsel was ineffective for failing to object to the prosecution's summation, which allegedly misrepresented that the medical records and victim's statements supported the fact that the victim had been cut by a knife. (Pet. Reply Br. at 30.) Specifically, petitioner references the prosecution's following statement:

> During the medical records, you can take a look at those, they're in evidence. She does say that a knife was used on the victim. What she doesn't realize is that she's actually cut by the knife, and she explained to you: I didn't have a mirror. I didn't know. I didn't know. I felt the pain to my neck, and she had explained the pain to the neck in the medical records. It's there. But, at that time, she didn't know that she was actually cut, and that's why she says no. But she does say a knife was used.

(Resp't App. at 644.) Petitioner's argument fails. Trial counsel may have made a strategic decision not to object during closings, particularly where the prosecutor fairly represented the evidence, and at worst, may have been ambiguous in using

the pronoun "she" to refer to both O'Kane and the victim. At trial, the victim testified that, during the rape, petitioner threatened that he had a knife, and pressed what felt like a small knife against her neck, causing her to feel pain. (Id. at 137-140.)  O'Kane, the physician's assistant who examined the victim at the hospital, testified that the victim reported having been sexually assaulted at knifepoint when she arrived at the hospital. (Id. at 260.) The victim "complained of tenderness" in her neck, but initially denied being cut by the knife because she hadn't realized she had been cut until O'Kane informed her of the abrasions on her neck and the victim observed them in a mirror. (Id. at 211, 267, 297.)  Thus, counsel's failure to object does not constitute deficient performance; rather, the decision not to object was part of sound trial strategy.[7]

> B.   Due Process Right to Fair Trial

Petitioner argues that he was denied his due process right to a fair trial where the prosecutor allegedly misrepresented the evidence in her summation and where the trial court failed to instruct the jury that "use or threaten the use of a dangerous instrument" under N.Y. Penal Law §130.95(1)(b) requires proof of actual possession.  Error in jury charges becomes problematic when the instruction "by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 146-47 (1973).  Even if the failure to include an

---

[7] Moreover, even if counsel's failure to object had constituted error, petitioner's claim would still fail because petitioner has failed to demonstrate that the prosecutor's remark was sufficiently prejudicial, such that there is a "reasonable probability" that it affected the outcome. The statement constituted a single remark in a lengthy summation, and there was ample evidence at trial that petitioner was guilty of the charges and that he used a knife to carry out the attack.

instruction on "actual possession" was error, petitioner's claims here are procedurally barred under the independent and adequate state ground doctrine and, under these facts, no miscarriage of justice exists.

           1.     <u>Independent and Adequate State Bar</u>

The Appellate Division determined that petitioner's due process right to fair trial claims were unpreserved, declining to review them "in the interest of justice," as petitioner conceded that his trial attorney did not object to either the prosecution's summation or the jury charge. (Resp't App. at 736, 786.)  Failure to object to the jury charge or ask for the actual possession instruction at trial serves as an adequate and independent ground to support the Appellate Division's rejection of petitioner's claims, precluding them from habeas review.  See <u>Bossett v. Walker</u>, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (ruling that a challenge to the jury instructions was barred as unpreserved where the petitioner failed to object to the charge at trial); <u>Levine v. Comm'r of Corr. Services</u>, 44 F.3d 121, 126 (2d Cir. 1995) (procedural default in state court qualifies as an independent and adequate state ground when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar") (internal citations and quotation omitted); <u>Harris v. Lempke</u>, No. 09 Civ. 5193 (LAP) (KNF), 2015 WL 2060811, at *9 (S.D.N.Y. 2015) (declining to review a habeas claim regarding the jury instructions where the Appellate Division found the claim to be unpreserved on account of the lawyer's failure to contemporaneously object at trial).

Federal habeas review of state court decisions resting on an adequate and independent state procedural default is barred unless petitioner can demonstrate (1) cause for the default and actual prejudice, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Gutierrez v. Smith, 702 F.3d 103 (2d Cir. 2012) (where a claim was unpreserved at the state level, "we can reach the merits of [petitioner's] legal insufficiency claim only if he can establish either 'cause' and 'prejudice' or 'actual innocence.'"). Petitioner does not meet either scenario. The "prejudice" requirement is certainly met as the difference between conviction for the Predatory Sexual Assault count and a lesser count is substantial, the former carrying a potential life sentence. However, an attorney's failure to object does not constitute "cause" so long as counsel's performance is not "constitutionally ineffective" under the Strickland standard. See Coleman, 501 U.S. at 752. Thus, this argument is unavailing because, as discussed above, petitioner has not demonstrated that his counsel's performance met the Strickland standard and petitioner did not suffer any prejudice because the evidence at trial was legally sufficient for conviction.

Petitioner also cannot demonstrate a fundamental miscarriage of justice, wherein he must prove that his is an "extraordinary case" resulting in the conviction of someone who is "actually innocent." Murray v. Carrier, 477 U.S. 479, 496 (1986). There is overwhelming evidence that petitioner committed the rape, including a victim identification at line-up and trial, as well as a match between petitioner's DNA and the semen on the victim's underwear. As discussed above,

even if an instruction had been made regarding "actual possession", no reasonable person could look at these facts and determine that petitioner did not have actual possession of the knife.  Despite this Court's determination that an "actual possession" instruction should be given in a § 130.95 case, the facts here do not allow it to conclude that there has been a fundamental miscarriage of justice.

       2.   <u>Exhaustion</u>

In any event, petitioner's due process claims are also barred from habeas review because they are unexhausted. Pursuant to AEDPA, a petitioner must have "exhausted the remedies available in the courts of the state" unless there is "an absence of available [s]tate corrective process."  28 U.S.C. § 2254(b)(1)(A), (B)(i). In order to exhaust his claim, a "prisoner must 'fairly present' his claim in <u>each</u> appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (emphasis added). When a petitioner fails "'to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2d Cir. 2001) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 (1991)).

In petitioner's application for leave to appeal to the New York Court of Appeals, he did not raise any due process right to fair trial claim and instead focused on his confrontation and ineffective assistance claims. (Resp't App. at 934.)

The factual record was sufficient to have raised the issue on appeal, but petitioner's failure to do so procedurally barred the claims at the state level.  Accordingly, the Court must deem the claims procedurally defaulted as he cannot overcome the exhaustion by demonstrating cause and prejudice, or showing actual innocence.

C.     Confrontation Claim

Petitioner makes a final argument that the trial court denied him his Sixth Amendment right to confrontation by admitting laboratory reports and testimony by an OCME analyst who had not performed all of the procedures herself. (Pet. Reply Br. at 2, ECF No. 23.)

Petitioner's confrontation claims regarding both the reports and testimony are procedurally barred.  The Appellate Court's finding that the legal claim was unpreserved, as counsel failed to make specific objections at trial, constitutes an independent and adequate state ground barring habeas relief.  See Downs v. Lape, 657 F.3d 97, 106 (2d Cir. 2011); see also People v. Paulin, 78 A.D. 3d 557, 558 (1st Dep't 2010) (holding that defendant's "generalized Confrontation Clause" objection was "insufficient to alert the court" to the particular issue).  The Appellate Court found that petitioner's "vague references to confrontation" were insufficient to alert the trial court to the claim. (Resp't App. at 930-931.)  Rather, counsel's comments at trial suggested an intent to object in the future, "contingent on whether the evidence proved objectionable."  (Id.)  Counsel repeatedly "declined the court's offers to review the reports to determine what was objectionable," agreeing that they would "argue about the redactions later." (Id. at 931.)  Yet, counsel made no specific

23

confrontation objections concerning the laboratory reports or Phillip's testimony. (Id.)  The only "arguably preserved" challenge according to the Appellate Division was as to Phillip's particular testimony about the statistical likelihood of finding another match with the same DNA profile; however, even if properly preserved, this claim is without merit as Phillips was the analyst who developed that statistic and she was subject to counsel's cross-examination.

Even if petitioner's Confrontation Clause claims were not procedurally barred, they fail on the merits.  As for the DNA reports, five Justices of the Supreme Court recently concluded that the admission of DNA profile reports has no Confrontation Clause implications, reasoning that such reports are very different from extrajudicial statements such as "affidavits, depositions, prior testimony, and confessions, that the Confrontation Clause was originally understood to reach." Williams v. Illinois, 132 S. Ct. 2221, 2228 (2012) (Alito, J., writing for four justices) (Thomas, J., concurring).  Accordingly, petitioner has failed to establish that the Appellate Division's decision was contrary to, or involved an unreasonable application, of Supreme Court precedent, as required by § 2254.  As for the testimony of Phillips, the Appellate Division found that "she made her own independent comparison between [petitioner's] DNA profile and the DNA recovered from semen stains on the victim's underwear."  (Resp't App. at 931.)  That factual finding is "presumed correct" and the petitioner has not shown the necessary "clear and convincing evidence" per § 2254(e)(1) to rebut the finding.  Accordingly, the confrontation claims are procedurally bared and, in any event, are without merit.

24

V.      CONCLUSION

For the reasons set forth above, the Court DENIES petitioner's request for habeas relief.

Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253(c).  Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal.  Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is hereby directed to dismiss the pending petition and terminate this action.

SO ORDERED.

Dated:      New York, New York
            September 1, 2015

_____
            KATHERINE B. FORREST
            United States District Judge

CC:
Kevin Rios
Din #09A5605
Great Meadow Correctional Facility
P.O. Box 51
Comstock, New York 12921-0051

25